IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-10-0118 |
| DERRICK WESLEY | * | |
| Defendant | * | |

## MEMORANDUM, ORDER, AND AMENDED JUDGMENT

Again pending before the Court is the Defendant's Motion to Reduce Sentence (ECF No. 55). The Government has responded (ECF No. 61) and the Defendant has replied (ECF No. 62). The Court previously denied the Motion (ECF No. 63), but then the Defendant appealed (ECF No. 64) and the Court of Appeals vacated the denial and remanded the matter for further proceedings, presumably in light of the opinion deciding *United States v. Wirsing*, 943 F.3d 175, 2019 WL 6139017 (4th Cir., Nov. 20, 2019). The Court now reconsiders its earlier ruling and reduces the sentence previously imposed.

The Defendant is eligible for reconsideration under § 404(a) of the First Step Act. *See United States v. Wirsing, id.*

In considering whether to reduce the sentence, the Court takes into account the factual basis for the plea of guilty (ECF No. 28), the sentencing statutes and the guidelines as they have been amended since the time of the Defendant's original sentencing, and his post-conviction conduct and circumstances. The Court does all of this while also considering the familiar factors set out in 18 U.S.C. § 3553(a).

First, the Court takes into account the history and characteristics of the Defendant. He has a substantial prior criminal history, so serious that he falls into criminal history category VI in the guidelines computation. None of his prior offenses involve violence, but they paint a picture of escalating involvement in the illegal drug trade. The Defendant appears to nurture and maintain relationships with critical family members, and it is significant that those relationships have lasted and even deepened during the term of his incarceration. Finally, while incarcerated, the Defendant has made productive use of the educational and other resources made available to him by the Bureau of Prisons. These last two findings count in the Defendant's favor.

The Court next considers the nature and circumstances of the offense. According to the plea agreement (ECF No. 28), the Defendant was arrested after he was involved in an automobile accident. When confronted by police, he was found to be behaving erratically and he was speaking incoherently. His pupils were dilated. He admitted to ingesting "coke and dope." A pat-down of the Defendant revealed a 45-caliber semiautomatic handgun in his possession. He also possessed 33 rounds of ammunition. Finally, he had 40 grams of crack cocaine and $6,030.00 in currency. The Defendant was in possession of a substantial quantity of illegal drugs with the intent to distribute the same. Most significantly, he was armed with a loaded handgun. When arrested, the Defendant was apparently high on drugs, was in possession of drugs that he intended to sell, and he was armed. In addition to committing a serious violation of the federal drug laws, the Defendant posed an imminent danger to others in the community.

Next, the Court considers the seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment. Armed drug dealers wreaked havoc in Baltimore in 2010, the year of the Defendant's arrest, and that remains true today. The crime is by definition serious, and one that must be punished in order to promote respect for the law.

Next, the Court considers the need for deterrence. The Court must impose a sentence that is sufficient to deter the Defendant with his lengthy record from returning to drug trafficking. Further, the sentence must convey to the wider community the complete unacceptability of the Defendant's conduct so that others are less likely to emulate it. If nothing else, there is the hope that a significant prison sentence imposed on this Defendant will discourage others from engaging in similar criminal conduct. All of that is appropriate here.

Next, the Court is required to consider any need to protect the public. The Defendant is a recidivist. He was found with a loaded firearm. In sentencing the defendant, in light of his record and given the circumstances of his offense, there is an inherent need to protect the public. This is mitigated somewhat by his positive course in prison. Nevertheless to protect the public, there remains a need to incapacitate the Defendant for a significant period of time.

Next, the Court is to consider the sentences imposed on others in similar circumstances to insure that there is not an unwarranted disparity between the penalty imposed on this Defendant and that imposed on others. The Court has reflected carefully on this factor. Historically, the penalties imposed in "crack cocaine" cases were disproportionate to those imposed in "powder cocaine" cases. Congress has changed the sentencing statutes in an effort to ameliorate this disparity, and the Court is now empowered through this process to reduce the Defendant's sentence to mitigate that disparity. This is a significant factor in resentencing the Defendant. However, it is largely offset by the fact that the Defendant possessed a loaded firearm when he was arrested.

Next, the Court considers whether the Defendant's need for training or treatment should influence the sentencing process. At this stage, the Court concludes that the Defendant has received substantial training and treatment, and that no longer remains a factor in deciding what sentence is appropriate here.

Last, the Court is to consider the Federal Sentencing Guidelines, with specific reference to the guidelines range now applicable after the substantial changes in the law referred to above. The Court notes that even with those changes, the Sentencing Commission nevertheless recommends a sentence *longer* than that previously imposed, with the bottom of the range being 151 months. That said, the Court notes that when the Defendant was originally sentenced, he received a term substantially less than the bottom of the much higher, then-applicable guideline range.

While the Court has given consideration to every detail and factor mentioned above, there are four factors that now predominate. First, Congress and the Sentencing Commission have significantly adjusted the relevant sentencing provisions in a downward direction. Second, the Defendant has taken significant steps to rehabilitate himself while incarcerated. Third, when the Defendant was originally convicted, he had a serious criminal history, and, of course, that circumstance has not changed – the Defendant still falls in criminal history category VI and the Sentencing Commission considers him to be a "career offender." Fourth, and last, and most significant of all, when the Defendant was arrested he was armed.

These mitigating and aggravating circumstances, taken into account along with all of the other factors mentioned, cause the Court to conclude that the sentence that is sufficient but not more than necessary is 144 months of incarceration to be followed by four years on supervised release, with all other terms and conditions of the original Judgment and Commitment Order (ECF No. 35) not affected by this Order remaining in full force and effect.

Upon remand and reconsideration, the MOTION TO REDUCE SENTENCE (ECF. No. 55) is GRANTED to the extent detailed above.

DATED this 18 day of Feb., 2020.

BY THE COURT:

*James K. Bredar*
James K. Bredar
Chief Judge